Congress specified a standard that it wanted USCIS to apply to UBESA waivers, the public and national interest, and the agency chose to apply a different standard. This was a reviewable error that federal courts of jurisdiction declared. When Congress created the UBESA waiver, it had people like Mr. Rodriguez in mind. He suffered a violent home invasion, he reported it to the police, and he participated actively in the police investigation. But like the vast majority of UBESA petitioners, Mr. Rodriguez is inadmissible, and recognizing that inadmissibility could pose an obstacle to its program, Congress created a new waiver, a special waiver, the UBESA waiver codified in 1182d14, which made the state's legal standard different and more generous than the catch-all waiver in 1182d3, to allow people like Mr. Rodriguez to apply a UBESA waiver, the opportunity to do so. In adjudicating Mr. Rodriguez's waiver, however, USCIS applied only the catch-all waiver standard and ignored the different and more generous UBESA waiver standard. It did not describe or apply the public interest standard or the national interest standard as Congress directed it to do. This is a procedural error. Are we, what are we to make, though, of the fact that the d14 waiver, that the decision does actually reference the public interest part of the standard, which does, could suggest, in fact, that they weren't just considering d3, that they also considered d4? Your Honor, we, it's true that the agency reproduced the statutory text d14, which references the public and national interest standard, and in a conclusory statement in its conclusion, did say that it was not in the public and national interest to admit Mr. Rodriguez. But throughout its, I just point the Court to two things. First, throughout its analysis, the agency did not, it made a clear matter of prompt analysis, did not reference the public and national interest standard, explain what it meant, or apply the facts of the case to what the public or national interest standard meant. Second, I point, Your Honors, to Joint Appendix 21, where USCIS recounts that it issued Mr. Rodriguez a notice of intent to deny and ask for evidence under the matter that would fulfill the matter of Congress standard, and made no reference to the national and public interest. And I'd also like to point the Court to the fact that as the amicus brief submitted by legal, legal assistance organizations points out, this is a systemic problem. USCIS routinely adjudicates U visa waivers, either without simply stating that they're, that they're employing the d3 standard, or purporting to apply d14 while, while only  Counsel, didn't USCIS expressly note in its decision in denying your client's applications for waiver of inadmissibility that, quote, the record does not establish that such a waiver would be in the public or national interest? Yes, Your Honor. Okay. You can see that. Why is that not enough as a matter of law? Why did USCIS need to do more? Your Honor, we, we believe that the agency has a duty to give a reasoned explanation for its decision. Congress established the d14 waiver against the backdrop, legislating against the backdrop of the matter of rank and factors that have been done in place for over two decades. And in doing so, unlike the, the, the enactment of the d14— Do you have legal support for the proposition that USCIS needed to do more? Your Honor, we would say, first of all, we do not have a specific case that addresses the, the, this particular procedural error and establishes that legal duty, but we do think that it's inherent, both in the fact that Congress created a substantive standard, which it did not do in d3, and again, legislated against the backdrop of d3, and the fact that the agency does have a duty to give reasoned decision-making. In this case, we just think it's, it's clear that what they did, and it's also clear, again, from the legal assistance groups, that what the agency is doing is running a d3 analysis where it finds that a person does not meet the d3 standard, is simply making that conclusory as well to d14, and we think that completely and fundamentally undermines Congress's purpose. It's also a procedural error, which this court in Sharkey and Montana and Kursland indicated is not covered by the jurisdictional bar at subclause b2. It's, it's sort of similar to if the agency were to apply, if the statute were to establish a particular burden of proof and the agency simply chose a different burden of proof, it would be a procedural error that the court would have jurisdiction to correct, even though it's, it's admittedly true that the court would not have jurisdiction if, if Mr. Rodriguez were challenging actually the substance of the agency's decision. It's true that subclause b2 would strip jurisdiction over that decision. I'd like to point the court to the facts that, to the, the breadth of the government's argument. The government is essentially arguing that if the agency were to adjudicate even all d14s on, based on a standard that it made up completely out of folklore, that was completely irrelevant to the, to the standard that Congress set out in the statute. Federal courts could not correct that error. And in fact, even if the agency employed a clearly impermissible standard, even if it specifically cited an applicant's race as the reason something were denied, a waiver were denied, federal courts would have no jurisdiction to correct that error either. We think that's so broad as to be purely implausible. We'd also point the court to the fact that the text of b2 itself says that it applies not to all decisions or actions, but specifically to the ones that are specified to be in the agency's discretion, and the application of the wrong legal standard is not specified by the statute to be in the agency's discretion. Finally, even assuming, for the sake of argument, that the district court lacked jurisdiction over Mr. Rodriguez's waiver application, it should have reviewed and corrected USCIS's legal errors in adjudicating his UBISA petition itself. Mr. Rodriguez can be applied for a waiver, but only if the effort can be UBISA, which depends on the court correcting USCIS's legal errors in that adjudication. For all those reasons, we respectfully request that the court reverse. All right, thank you very much. You've got, um, well, your side has some more questions. Okay, um, Ms. Francis? Good morning. This is the U.S. Attorney Kimberly Francis of the Eastern District of New York, our defendant's athlete. The district court correctly concluded that it lacked jurisdiction in light of explicit statutory language barring review. On appeal, plaintiff attempts to recast his claims as purportedly challenging non-discretionary legal and procedural errors, but plaintiff's arguments are not supported by the record or the law. Plaintiff principally argues that USCIS committed error in purportedly refusing to adjudicate one of the waivers, the T-14 public or national interest waiver. This is counterfactual. USCIS expressly denied both the plaintiff's waiver applications. This is reflected in the appendix pages 19 through 20, 27, and 29. There are multiple references to the waiver standards that USCIS applied. What plaintiff is actually seeking to do in this action is to challenge the wisdom of USCIS's substantive discretionary decision, which is not permitted under decisions by this court, including norm to jam, which is directly Would there be some requirement, let's say hypothetically, that for these decisions there's a form that they could fill out that say, you know, D-3, check. D-14, check. And if they did that, so you're acknowledging that, that would be enough for us to conclude that those were considered if there was no analysis and essentially just checks on a form? A few responses to that, I mean, right. The actual substance of it, it is a discretionary decision at bottom, but is your view that that includes that they could just not look at D-14 at all because they're allowed to look at it and then in discretion find, no, that it's not warranted? And so I guess my question is, are you saying that it would not be a problem if in fact D-14 were not considered at all? A few responses to that. So one, let me just say that I'm not aware of any case law from this circuit addressing that precise question of whether USCIS would have to adjudicate a D-14 waiver presented to it. Klintick cites a few different cases for the proposition that USCIS must adjudicate the waiver. Those cases involve very different circumstances and did not involve this particular waiver. I'll also note that the Supreme Court's recent decision in Patel raises questions about whether there's jurisdiction to review. Right, but there's an even more recent decision from the Supreme Court, isn't there? Are you referencing Wilkinson now? I am indeed. Yes, so Wilkinson issued, I think last week, addressed a petition for review of a final order of removal and in that context determined that the application of a legal standard to particular facts is a mixed question of fact and law, such that under a different provision, 1252-82, the court of appeals would have jurisdiction to review it on a petition for review of a final order of removal, which is not what this case is. So a very more recent decision provides some color as to the scope of Patel, but it's in a different context than is at issue here. Are you suggesting that post-Patel district courts are completely incapable of considering legal and procedural challenges to the discretionary decisions made under the INA? So the holding of Patel, I think, is relevant for a few different reasons. The court, in interpreting a particular provision, an adjacent provision to the one at issue here, looked at the broad language and said that you couldn't basically separate out non-discretionary antecedent steps in the course of a discretionary determination under the language of that provision here. So where one of those provisions applies, and it's a discretionary determination under the statute, and there is no petition for review of a final order of removal, it is possible that Patel would bar review. However, just to be clear, we don't think that it's necessary for the court to decide the precise scope of Patel in order to affirm. The district courts would not rely upon Patel, and under this court's pre-Patel decisions, the court lacked jurisdiction to review these waivers. Counsel, can we talk about the U visa question? I'm trying to understand why, since Plaintiff says he has some new evidence that he would provide regarding his waiver application, if we were to affirm the dismissal of the U visa, a challenge to the U visa issue at this point, we'd be closing that door forever, right? Isn't it possible that there still could be some development on that front that would allow Plaintiff to proceed or Petitioner to proceed? In the absence of a waiver, I don't believe that that is viewed in this action that Plaintiff is inadmissible and as such would not be eligible for a U visa. So in the absence of a waiver, if the court were to affirm the district court's conclusion on the waiver, he would not be eligible for a U visa with respect to this application. Now, if he reapplies in the future, he could re-raise those issues. But with respect to this application, in the absence of a different conclusion on the waiver issue, he would not be eligible. So he'd be permitted to reapply for a U visa if he reapplied for a waiver with new evidence, which is, I think his claim is that he has new evidence that he's going to present. He'd be able to also reapply for a U visa? No, that's not what I'm saying. I'm saying Your Honor asked whether the door was completely shut for a U visa. And my point is simply that were he to reapply for a U visa, so not just reapply for the waiver but to send a new application for a U visa, this particular decision would not preclude a future application like that. But in the absence of a waiver, the application that had already been denied, that is closed, yes. Okay. If I may just emphasize a few different, a few additional points. I was referencing the Court's decision in Noir to Jarre. And in that case, like in this case, the plaintiff sought to recast their claims as procedural challenges in an effort to get around jurisdictional harm. And this Court rejected that attempt, proving that if the government of a plaintiff's claim is to challenge USCIS's substantive discretionary decision, including challenging the reasons for the decision, the Court lacks jurisdiction over that claim. Other decisions of this Court support the same outcome, including Ahmed, cited on page 26 of our brief, Salim, cited on page 28, and Zhao, Duchenne, cited on our brief at page 35, and the plaintiff's replied brief at page 7. Plaintiff's other arguments, that USCIS did not give enough weight to certain kinds of evidence or gave too much weight to other kinds of evidence, are flawed for the same reasons. These are challenges to USCIS's substantive exercise of discretion, and they are foreign. Even if these were framed as questions of law, the District Court did not have jurisdiction to address them. While section 1252 HUD, the provision I referenced earlier, and the one that's at issue in Wilkinson, preserves her view in the Court, in this Court, for constitutional claims or questions of law, it only applied in the context of a petition for review of a final order of removal. That is not the posture of this case. Does Wilkinson actually explicitly limit itself to that context? Or is that your interpretation of it? That's my interpretation of it. It was a petition for review under 1252 HUD, and the implication of Wilkinson that the Court to even analyze, you know, whether the issues at Wilkinson were questions of fact or questions of law, the Court had clearly already determined that they were within the scope of the jurisdictional bar, and the question is, can you then seek review in the Court of Appeals under 1252 HUD on a petition for review? So we do think that Wilkinson is limited to that extent. As I indicated earlier, the Supreme Court's decision in Patel is not necessary for affirmance, but we do believe it strengthens the conclusion that review here is foreclosed in light of its discussion of the broad statutory language in an adjacent provision barring review of discretionary determinations. The Court also acknowledged potential policy concerns with its holding and proving that it could bar review of discretionary applications as long as they are outside the context of the petition for review, and the Court said that that may be what Congress had in mind, that those policy concerns cannot trump the best interpretation of the statute. The Administrative Procedure Act provides an additional basis for concluding the district court-lined jurisdiction. It does not apply where other statutes preclude judicial review, as is the case here, or where agency action is committed to agency discretion as a matter of law. And very briefly, I'll just wrap up by noting the record reflects that USDAIS did adjudicate the D14 waiver. What plaintiffs argue in this case, in pages 24 to 25 of the plaintiff's opening brief, is that USDAIS should have said something else, should have imported a standard different waiver provision. But that's not a requirement that Congress has established. Congress established the visa waiver. Congress decided the scope of the D14 waiver. It did not include the additional requirements that the plaintiff is seeking in this work. In support, there's no further questions. Thank you.  Thank you, Ms. Mace. Or Frances, I'm sorry. Okay. And we'll have some rebuttal from Ms. Lawrence. Thank you, Your Honors. I'm Charlotte Lawrence from the Bureau of Appellate History and Rehabilitation. This was a complete failure to apply the D14 standard, which amounts to a failure to adjudicate. If Your Honors asks whether it would be enough for the agency to check a box, it's form book administrative law that that's not enough. But even if it were, the agency here did something different. It didn't just say, yes, no D14. It said, no D14 CD3. It gave you its reasoning. And its reasoning was entirely limited to the matter-of-concern factors and perhaps the matter-of-merit factors, which also relate to general access and discussion. It gave no engagement with the D14 standard. To the extent that it mentioned public safety, that analysis was cabined to past criminal violations, which is one of the marker factors, where the national and public interest is not so limited. It contemplates service or benefit to society. And to the extent that it contemplates harm to society, it can't be construed to be limited to past violations alone. The government tells you— Aren't you wading a bit into the question, sort of the substance of the discretionary decision to say sort of that these are the things that have to be considered? I mean, beyond sort of what's referenced as far as the national public or national interest, there isn't more that—or there's not something that tells us that there's more specifically that they had to look at to consider this, is there? That's right, Your Honor, and thank you. I think I cite or I describe what the public and national interest contemplates, not to say that the agency must do the analysis that I described, but as evidence that the analysis does not engage with the national or public interest in any way. Whatever that analysis is, they do have the ability to scope out. But Congress, not the agency, said it has to do something different than the D-3. So it is beyond the agency's discretion to say, we're going to ignore that D-14 requires a compensation of the public and national interest, and we're just going to look at D-3 instead. That goes to the government's comments about noir-to-lagerre, which explicitly describes engagement with the substance of the standard. If they had done any of that engagement, even if they had made an argument that the FONCA factors suffice to satisfy the D-14 public and national interest standard, this would be a harder case for us, but they didn't do that. There's been some discussion about the absence of an on-point authority from the federal courts of appeals on this issue. That's part of the problem. That's what has led to the scenario that Artemides describes, where USBIS is systematically doing the FONCA analysis only and saying, we're just not going to do D-14. I want to briefly address the government's arguments on Patel. The government mentioned, and it's true, that Patel relies substantially on the broadening language in the parallel provision interpreted, which is subclause 1. Our appeal is about subclause 2. Subclause 1 said any judgment regarding the granting of relief. Subclause 2, our appeal focuses on any jurisdiction over any decision or action of the authority for which it is specified to be with the agency. The broadening language was key to the analysis, and it exempts the Patel conclusion. It exempts subclause 2 from Patel's conclusion. This also goes to the government's argument on Wilkinson, that Wilkinson somehow implies that we need HUD because jurisdiction over these kind of issues has been stripped in the first place. Wilkinson also focused on subclause 1, just as Patel did. So the broader reading, the broader application of jurisdiction stripping that perhaps did necessitate HUD to restore jurisdiction over Wilkinson does not apply to our case. Finally, I want to address the government's—the government says that Patel has language about how perhaps outside of the PFR, its interpretation of subclause 1 would strip jurisdiction over legal issues. I want to note that the Supreme Court declined to go that far. Other circuits have, in fact, expressly rejected that reading. The 11th Circuit, whose language was quoted in our brief, and the 2nd Circuit should have taken first. So it would be a drastic and devastating step for clients like ours who have done a service to society and are speaking to the Supreme Court. With the permission of the presider, can I ask you to give me 30 seconds on the U-Visa question? Yes, of course. So reapplication on the U-Visa would come out exactly the same way. If we had a waiver that was approved, then we would be back here on the U-Visa issue. There's no reason that you need to put the agency and the federal courts through that if you can just decide the admittedly reviewable U-Visa errors today. Also, relief on the adjudication of the U-Visa and revamping the agency to decide waiver doesn't need to be the only path to relief. It needs to be a cognizable path for relief for the purposes of the motion to dismiss the appeal proceeding. Okay. Thank you. Thank you. All right. Thank you. Yes, and thank you. We'll take the case in our advisement. Thank you.